**UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF
FLORIDA**

**MIAMI DIVISION**

**CASE NO.: 1:20-cv-22724-DPG**

| | |
|---|---|
| JUAN NIEVES | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| CHARLOTTE BURROWS, | ) |
| CHAIR OF THE EQUAL EMPLOYMENT | ) |
| OPPORTUNITY COMMISSION | ) |
| | |
| Defendant | |

_____/

**SECOND AMENDED COMPLAINT
WITH JURY TRIAL DEMAND**

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the

Civil Rights Act of 1991 to correct unlawful discrimination in federal employment practices

on the basis of sex and retaliation, and to provide appropriate relief to Plaintiff Juan Nieves.

As alleged with greater particularity below, Plaintiff JUAN NIEVES

("**PLAINTIFF**" and/or "**Plaintiff NIEVES**") alleges that he was subjected to ongoing

harassment (sexual and non-sexual) and a hostile work environment by the Chair of the

Equal Employment Opportunity Commission Charlotte Burrows ("**Defendant**

**BURROWS**) when Defendant was aware of and permitted Enforcement Supervisor

Kathryine Gonzalez ("Supervisor Gonzalez") to discriminate against Plaintiff on the basis

of sex (male), from July of 2016 through March of 2020. Additionally, Defendants

AZOY SOCORRO, LLP

2020 Ponce de Leon Boulevard, Suite 1008 | Coral Gables, FL 33134 | T: (305) 340-7542 | F: (305) 418-7438 | W: www.azoysocorro.com

retaliated against Plaintiff NIEVES for opposing such practices by, in part, refusing to investigate the claims, withholding promotions, changing his schedule, and frustrating his workload and taking actions that threatened his employment.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3), and Section 717(c) of Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C.A. Section 2000e-16(c), 2000e-5(f)(1) and (3) et seq. ("Title VII") and section 102 of the Civil Rights Act of 1991, as amended, codified at 42 U.S.C.A. Section 1981, et seq.; and Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C.A. Section 791, the Civil Rights Attorney's Award Act, as amended, codified at 42 U.S.C.A. Section 1988, et seq.

2.      Venue is proper in the United State District Court for the Southern District of Florida, Miami Division, pursuant to 42 U.S.C., 2000e-5(f)(3).  In addition, venue is proper herein as the primary actions complained of either occurred within or were directed within the geographical boundaries of the Miami, Florida (Southern District of Florida); and pursuant to 28 U.S.C. Section 1391(e).

## PARTIES

3.      Plaintiff NIEVES is a Hispanic male currently domiciled in Miami, Florida, and who for all times relevant herein has been employed on a full-time basis as an employee of the United States Equal Employment Opportunity Commission ("EEOC"). At those times relevant to the subject of this lawsuit, Plaintiff NIEVES was assigned for his professional work to the Miami District Office, a field office within the Miami District of the EEOC located at 100 SE 2nd Street, Suite 1500, Miami, FL 33131 ("MIDO").

4.      At all relevant times, Defendant has continuously been a Federal Agency doing business in the State of Florida and within the City of Miami and has continuously had at least 15 employees. At those times relevant to the subject of this lawsuit, Plaintiff NIEVES was employed by and assigned for his professional work MIDO.

5.      Defendant BURROWS is the Chair of the EEOC and, as such, is the Defendant only in her official capacity as the Chair of the Defendant EEOC. Defendant BURROWS is the senior Executive Branch federal official responsible for the actions of the United States Equal Employment Opportunity Commission, which is the principal subject of the allegations made herein, and which is located at 131 M St. NE, 6th Floor, Washington, DC 20507.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES/CONDITIONS PRECEDENT**

6.      From approximately July of 2016 to March of 2020, Plaintiff NIEVES suffered from continuing violations and discrimination by Defendants as outlined in more detail herein.

7.      At all times material hereto, Plaintiff NIEVES was misled by Defendants into allowing any applicable statutory periods to lapse.

8.      Plaintiff NIEVES advised the EEOC of complaints of unlawful sexual harassment, discrimination based on sex and retaliation since approximately 2016.

9.      On or about November 3, 2017, Plaintiff NIEVES timely initiated the involvement of the Equal Employment Opportunity (EEO) Office

10.      On or about February 22, 2018, Plaintiff NIEVES was issued the Notice of Right to File a Formal  Complaint. Plaintiff NIEVES timely filed a formal EEO complaint.

11.      On or about March 2, 2018, Plaintiff NIEVES timely filed his formal EEO Complaint.

12.      More than thirty (30) days prior to the institution of this lawsuit, Plaintiff NIEVES filed a charge with the Commission alleging violations of Title VII by Defendant EEOC.

13.     Plaintiff submitted charges of discrimination to Defendant EEOC within 180 days of the discrimination against them.

14.     Prior to the institution of this lawsuit, Defendant EEOC and Defendant BURROWS issued a Final Agency Decision ("FAD") on April 3, 2020.

15.     Prior to the institution of this lawsuit, Defendant EEOC, Defendant BURROWS and/or representatives failed/refused to attempt to eliminate the unlawful employment practices alleged below and to effect Defendant's voluntary compliance with Title VII through informal methods of conciliation, conference, and persuasion within the meaning of Section 706(b) of Title VII, 42 U.S.C. Sections 2000e-5(b).

16.     Thus, all conditions precedent to bringing this action have been performed or occurred.

## STATEMENT OF FACTS

17.     In July 2015, Plaintiff Juan Nieves (male) was hired by the Memphis District Office (MEDO) of the U.S. Equal Employment Opportunity Commission. in July 2015.

18.     In June 2016, Complainant requested and was granted hardship transfer to the Miami District Office (MIDO) and started work as an Investigator in MIDO in July 2016.

### A.  Harassment

19.     Plaintiff worked under the supervision of Katherine Gonzalez when he started at MIDO in July 2016 through November 2017.

20.     Plaintiff NIEVES was subjected to ongoing harassment (sexual and non-sexual) and a hostile work environment by Supervisor Katherine Gonzalez ("Supervisor GONZALEZ"), a former MIDO Enforcement Supervisor and Defendants, on the bases of sex (male); national origin (Hispanic) and disability (post-traumatic stress disorder and/or major depressive and anxiety

disorder (collectively, PTSD) from 2016 to March of 2020.

21.     Plaintiff NIEVES was subjected to unwanted, unsolicited sexual advances by Supervisor GONZALEZ.  Indeed, Supervisor GONZALEZ would engage in "grooming," in which she would use her position as a Supervisor and Plaintiff NIEVES's disability to force him into a non-consensual sexual relationship.

22.     Defendants were on notice since 2012 that Supervisor GONZALEZ engaged in offensive sexual harassment of her subordinates.

23.     Specifically, Supervisor GONZALEZ's offensive conduct was severe and pervasive enough to create an objectively hostile and/or abusive work environment for Plaintiff NIEVES at MIDO. Specifically, the offensive conduct included but was not limited to the following:

24.     On or about July 27, 2016, Supervisor GONZALEZ sexual advances toward Plaintiff NIEVES. Plaintiff NIEVES communicated his opposition to Supervisor GONZALEZ's. Specifically, Plaintiff told Supervisor GONZALEZ that he was working to fix his marriage.

25.     From July of 2016 to January of 2018, Plaintiff NIEVES continuously reprised his opposition to Supervisor Gonzalez, as her flirtatious behavior and advances were ongoing and never ending. Specifically, Supervisor Gonzalez's flirtatious behavior and advances included, but were not limited to:

     a   On August 31, 2016, Supervisor GONZALEZ leaned towards Plaintiff to "parade" her breasts and touched his knee in a sexual manner.

     b.  On or about September 21, 2016, Supervisor GONZALEZ touched her breasts and told Plaintiff "this is a new bra; do you like it?"

     c.  On or about November 2, 2016, Supervisor GONZALEZ told Plaintiff "a lot

of woman would be interested in young professionals, such as you, I would be interested"

d.  On or about December 14, 2016, Supervisor Gonzalez entered Plaintiff's office, closed the door, and leaned towards Plaintiff, brushing her breasts against Plaintiff's shoulder, under the pretense that she was attempting to look at his computer screen.

e.  On or about February 1, 2017, Supervisor Gonzalez entered Plaintiff's office, closed the door, sat in front of Plaintiff, and stared at him, while fixing her bra or shirt cleavage.

f.  On or about, March 8, 2017, Supervisor Gonzalez told Plaintiff, "you do such a great job analyzing cases, why is that you can't understand that your marriage is over."

g.  On or about April 5, 2017, Supervisor GONZALEZ raised her eyebrows and point her chest forward toward Plaintiff, and the proceeded to enter Plaintiff's office during work hours to discuss sexual matters, knowing that such conversations were unwanted by Plaintiff.

h.  On or about May 20, 2017, Plaintiff was forced to change his number as Supervisor GONZALEZ repeatedly ignored Plaintiff's request to stop calling and texting, as such communications were creating issues between Plaintiff and his wife.

i.  On or about May 24, 2017, when Supervisor GONZALEZ wore a low cut top exposing her breasts, she told Plaintiff not to be a "pussy," which was an insinuation that Plaintiff should engage in an extramarital affair with her.

j.  On or about June 21, 2017, shortly after Plaintiff changed his phone number to avoid Supervisor Gonzalez's messages, Supervisor GONZALEZ began to constantly message Plaintiff via Offer Up after discovering that he was selling an item on Offer Up. Specifically, Supervisor GONZALEZ would message Plaintiff on Offer Up, saying:

- "you still have an offer from me."

- "what are you doing tonight"

- "let's hang"

- "what are you doing this weekend"

k.  On or about July 26, 2017, Supervisor Gonzalez entered Plaintiff's office, closed the door, and leaned towards Plaintiff, brushing her breasts against Plaintiff's shoulder, under the pretense that she was attempting to look at his computer screen.

l.  On or about August 30, 2017, Supervisor Gonzalez asked Plaintiff "is your marriage done yet?", as well as telling Plaintiff he is a "go getter" and should be with an ambitious woman like herself and unlike his wife.

m.  On or about September 25, 2017, Supervisor Gonzalez told Plaintiff that he was cranky because his wife did not "give him any" and she has had affairs and that everything was fine, and asked Plaintiff if he thought about cheating on his wife.

n.  On or about October 11, 2017, Supervisor Gonzalez entered Plaintiff's office, closed the door, and leaned towards Plaintiff, brushing her breasts against Plaintiff's shoulder, and called him a pussy, saying "this was Miami everyone

gets divorced.

o. On or about October 31, 2017, Supervisor GONZALEZ, attempted to perform oral sex on Plaintiff, while Plaintiff drove her home from a Halloween party at a co-worker's house.

26. Plaintiff NIEVES, on a weekly basis, complained about Supervisor GONZALEZ'S behavior to various levels of management to no avail.

a. On or about November 16, 2016, Plaintiff made an informal complaint to Rosemary Caddle related to Supervisor Gonzalez's repeated harassment as set forth in paragraphs 26 (a)-(o).

b. On or about December 7, 2016, Plaintiff made an informal complaint to Nitza Wright and to Mercedes Ricardo related to Supervisor Gonzalez's repeated harassment as set forth in paragraphs 26 (a)-(o).On or about March 2, 2017, Plaintiff filed his formal complaint with an EEO Counsel regarding harassment and retaliation by MIDO management.

c. On or about April 11, 2018, Plaintiff sent a memo to Director Farrell, detailing harassment that he and other MIDO employees had been subjected to by MIDO management and Supervisor Gonzalez.

27. At the time, Plaintiff NIEVES's who has been diagnosed PTSD was "vulnerable" and utilized poor coping mechanisms (e.g., required new medications for anxiety and for sleep and began attending more medical appointments) when Supervisor GONZALEZ was harassing him.

28. Supervisor GONZALEZ's harassment exacerbated Plaintiff NIEVES's pre-existing condition of PTSD. Specifically, Plaintiff's mental health deteriorated, his anxiety increased significantly, he began hearing voices, and he became very paranoid.

AZOY SOCORRO, LLP

2020 Ponce de Leon Boulevard, Suite 1008 | Coral Gables, FL 33134 | T: (305) 340-7542 | F: (305) 418-7438 | W: www.azoysocorro.com

29.      From July 2016 to January 2017 Plaintiff's disability impairment rating increased from 70% to 100%, as a result of the constant harassment he was subjected to.

30.      In January of 2017, as a result of Plaintiff's PTSD being exacerbated, Plaintiff was prescribed strong medications to manage his PTSD and anxiety.

31.      Supervisor GONZALEZ was aware of Plaintiff NIEVES's PTSD and used her knowledge of the symptoms of his condition to trigger him. Supervisor GONZALEZ would play "head games" with Plaintiff NIEVES

32.      Plaintiff NIEVES's accepted the fact that if he did not "go along" with Supervisor GONZALEZ's unwanted conduct, she would make his life difficult. Specifically, Plaintiff was deterred from making complaints against Supervisor GONZALEZ, as his complaints were ignored and subjected him to retaliation from Supervisor GONZALEZ.

33.      From July of 2016 to January of 2018, Plaintiff NIEVES was negatively affected as result of rejecting Supervisor GONZALEZ's advances and unwanted conduct

   a.   Supervisor GONZALEZ repeatedly threatened Plaintiff with being written up for insubordination whenever Plaintiff rejected her advances. Plaintiff initially received such threat on or about July 31, 2016, however, the threats continued on a weekly basis until January of 2018.

   b.   On or about October 20, 2016, Supervisor Gonzalez denied Plaintiff a cash award for the 2016 fiscal year, while awarding other who were less deserving

   c.   On or about October 12, 2017, Supervisor GONZALEZ placed Plaintiff on intake for almost eight consecutive weeks.

   d.   On or about November 3, 2017, Supervisor GONZALEZ unequally and preferentially distributed workload to Plaintiff, assigning him with less C

processed charges in comparison to others, as well as assigning Plaintiff charges to write as cause, despite having already determined as cause.

e. After November 3, 2017, Plaintiff was shut out by coworkers as they stopped interacting with him upon Supervisor GONZALEZ's request.

f. Plaintiff's PTSD was exacerbated by 30 percentage points

g. Plaintiff's marriage progressively deteriorated, amid Supervisor Gonzalez' constant late-night calls and text

**B. Retaliation**

34.     Plaintiff NIEVES did not solicit or incite the conduct and, instead, informed Supervisor GONZALEZ that said conduct was unwelcomed, undesirable and offensive, during Plaintiff's first week on the job, and on an ongoing basis throughout his employment at MIDO.

35.     Plaintiff NIEVES was retaliated against by Supervisor GONZALEZ due to his association with. Robert Tom, Mario Hernandez, and Jose De La Rosa, and because of his participation in a protected activity when he met with OEO Director Erica White-Dunston on or about October 3, 2017.

36.     Plaintiff NIEVES was retaliated against by Supervisor GONZALEZ when he engaged in protected activity by rejecting and opposing her advances to engage in sexual activity in the office, which include but are not limited to the following occasions:

a. On or about July 27, 2016, Supervisor GONZALEZ threatened Plaintiff with being written up for insubordination when Plaintiff rejected her advances.

b. On or about August 31, 2016, Supervisor GONZALEZ threatened Plaintiff with being written up for insubordination when Plaintiff rejected her advances.

c. On or about September 21, 2016, Supervisor GONZALEZ threatened Plaintiff with being written up for insubordination when Plaintiff rejected her advances.

d.  On or about November 2, 2016, Supervisor GONZALEZ threatened Plaintiff with being written up for insubordination when Plaintiff rejected her advances.

e.  On or about December 14, 2016, Supervisor GONZALEZ threatened Plaintiff with being written up for insubordination when Plaintiff rejected her advances.

f.  On or about February 1, 2017, Supervisor GONZALEZ threatened Plaintiff with being written up for insubordination when Plaintiff rejected her advances.

g.  On or about March 8, 2017, Supervisor GONZALEZ threatened Plaintiff with being written up for insubordination when Plaintiff rejected her advances.

h.  On or about April 5, 2017, Supervisor GONZALEZ threatened Plaintiff with being written up for insubordination when Plaintiff rejected her advances.

i.  On or about May 24, 2017, Supervisor GONZALEZ threatened Plaintiff with being written up for insubordination when Plaintiff rejected her advances.

j.  On or about July 26, 2017, Supervisor GONZALEZ threatened Plaintiff with being written up for insubordination when Plaintiff rejected her advances.

k.  On or about August 30, 2017, Supervisor GONZALEZ threatened Plaintiff with being written up for insubordination when Plaintiff rejected her advances.

l.  On or about October 11, 2017, Supervisor GONZALEZ threatened Plaintiff with being written up for insubordination when Plaintiff rejected her advances.

m.  On or about October 31, 2017, Supervisor GONZALEZ  threatened Plaintiff with being written up for insubordination when Plaintiff rejected her advances.

n.  On or about Supervisor GONZALEZ repeatedly threatened Plaintiff with being written up for insubordination whenever Plaintiff rejected her advances.

37.     Moreover, Supervisor GONZALEZ retaliatory actions included, but were not

limited to:

    a.  Beginning on or about July 31, 2016, Supervisor GONZALEZ would overly scrutinize Plaintiff NIEVES's work.

    b.  Supervisor GONZALEZ informed other employees of the claim Plaintiff filed against her on November 3, 2017, and instructed staff not to speak with Plaintiff because of his complaint.

    c.  On or about October 27, 2016, Supervisor Gonzalez denied Plaintiff a cash award for the 2016 fiscal year, while another awarding other who were less deserving

    d.  On or about November 16, 2016, Supervisor GONZALEZ, belittled and ridiculed Plaintiff NIEVES in public, during weekly meetings and on Novell Messenger, saying to others, "[t]his is what I have to deal with every day" and "[d]on't listen to this guy, he doesn't not know what he is talking about."

    e.  On or about April 19, 2017, Supervisor Gonzalez would told coworkers that Plaintiff had issues and was crazy.

    f.  On or about October 18, 2017, Supervisor GONZALEZ placed Plaintiff on intake for almost eight consecutive weeks.

    g.  On November 15, 2017, Supervisor GONZALEZ unequally and preferentially distributed workload to Plaintiff, assigning him with less C processed charges in comparison to others.

    h.  Specifically, Supervisor GONZALEZ, on November 3, 2017, without Plaintiff NIEVES's permission posted a picture of him on Facebook. It was common knowledge in the office that he did not like social media or pictures of him being taken. However, Supervisor GONZALEZ uploaded a picture

giving the appearance that Plaintiff NIEVES was drinking an alcoholic beverage rather than a Coca Cola.

38.     Plaintiff NIEVES interpreted Supervisor GONZALEZ's behavior as punishment for refusing her unwelcomed conduct as set forth in paragraphs 36 (a) –(n).

39.     Plaintiff NIEVES also informed MIDO Director Michael Farrell ("Director Farrell") of Supervisor GONZALEZ's unwelcomed conduct and those said actions triggered his PTSD. Plaintiff, initially informed Director Farrell when he engaged in protected activity by initiating EEO contact on or about November 3, 2017.

40.     Again, on April 11, 2018, Plaintiff sent an email to Director Farrell detailing the harassing and retaliatory conduct that he was subjected to by MIDO management, which included but was not limited to the conduct set forth in paragraph 36 (a) – (n) and paragraph 37 (a) – (h).

41.     On April 11, 2018, Director Farrell communicated to Plaintiff that the situation with Supervisor GONZALEZ preceded him, and Agency Headquarters was aware of the matter.

42.     During Plaintiff's employment, management protected Supervisor GONZALEZ and allowed her to continue to use her power and influence in the MIDO to harass, coerce, and abuse Plaintiff. Nevertheless, MIDO management knowingly allowed Supervisor GONZALEZ's conduct to continue and did nothing to remedy or stop the situation.

43.     Director Farrell and MIDO management's response to the harassment was neither immediate nor appropriate. MIDO management failed to take any action to investigate the harassment for approximately four years while rumors/reports were circulating by MIDO's staff about Supervisor GONZALEZ's inappropriate and unwanted sexual behavior in the office.

44.     Director Farrell was aware of Supervisor GONZALEZ's sexual advances to subordinates in the past, and he opted to ignore them and protect Supervisor GONZALEZ.

45.     In fact, MIDO management was aware of Supervisor GONZALEZ's harassing conduct toward MIDO employes, in general, since 2012 and refused to act to end same.

46.     Plaintiff NIEVES on or about April 11, 2018, sent Director Farrell an email, detailing the harassment and retaliation he had been subjected to.

47.     Director Farrell did not Plaintiff's allegations of sexual harassment and retaliation seriously. In fact, on or about April 11, 2018, Director Farrell's response to Plaintiff's complaints, was to accuse Plaintiff of attempting to "set up" Supervisor Gonzalez

48.     Throughout the entirety of Plaintiff's employment at MIDO, Defendants were aware of Supervisor GONZALEZ's on going sexual harassment of Plaintiff NIEVES, and other male employees, as well as MIDO management's retaliatory conduct related to same, but took no action to stop it or prevent it from occurring.

49.     From 2016 Plaintiff NIEVES informed Supervisor Wright, Supervisor Caddle, and Supervisor Ricardo, Director Farrell and the EEO about Supervisor GONZALEZ's conduct, but nothing was done to stop her behavior or to protect Plaintiff NIEVES and other similar situated male employees from her.

50.     Specifically, Plaintiff NIEVES initially made an informal complaint to Ms. Caddle in November of 2016. In addition, Plaintiff made an informal complaint to Ms. Riccardo and Ms. Wright in December of 2016.

51.     Notwithstanding repeated and continuing complaints about the sexually harassing comments and conduct of Supervisor GONZALEZ, Supervisor GONZALEZ continued to sexually harass Plaintiff NIEVES and other male employees.

52.     MIDO management began retaliating against Plaintiff NIEVES, after he engaged in protected activity by participating in an interview with OEO Director Erica White Dunston on

October 13, 2017, with regard to Robert Tom's EEO complaint.

53.     MIDO management intensified their retaliation against Plaintiff, when he contacted an EEO counselor with complaints of discrimination by MIDO management and Supervisor Gonzalez on or about  November 3, 2017.

54.     MIDO management retaliated against Plaintiff NIEVES because, on a weekly basis, he repeatedly objected, reported and opposed Supervisor GONZALEZ's sexually inappropriate comments and conduct.

55.     Plaintiff NIEVES was subjected to retaliation from Director Farrell and MIDO management after Plaintiff NIEVES engaged in protected activity by meeting with OEO  Director Erica White Dunston on October 13, 2017, to discuss Supervisor Gonzalez's harassing and retaliatory conduct toward himself and other MIDO employees, initiating contact with an EEO counselor on or about October 13, 2017, and for filing a formal EEOC complaint on or about March 2, 2017

> a.  Specifically, Plaintiff had minimal pending intake mail inventory on or about September 22, 2017, but was assigned 37 cases and had processed 12, by on or about November 6, 2017.
>
> b.  On or about November 6, 2017, MIDO management began assigning Plaintiff NIEVES with a tougher and more complex case load to negatively impact the total number of charges he could complete over the course of a fiscal year
>
> c.  On or about November 6, 2017, MIDO management began manipulating Plaintiff NIEVES's case load. Specifically, files related to cases Plaintiff's cases completed were deleted.

d.   On or about January 29, 2018, Plaintiff was disciplined by Mercedes Riccardo, without any legitimate reason, for issues related to Plaintiff's time, attendance, and alleged insubordination. Additionally, Mercedes Riccardo threatened Plaintiff Nieves with being placed on a Performance Improvement Plan (PIP) without a legitimate reason.

e.   On or about June 21, 2018, MIDO management denied Plaintiff NIEVES the benefit of telework on a third day.

f.   On or about February 20, 2018, MIDO management denied Plaintiff's leave requests and marked Plaintiff as AWOL, despite Plaintiff being good producer.

g.   Beginning on or about April 11, 2018, to the end of Plaintiff's employment, Director Farrell, on a weekly basis, shamed, questioned, doubted and threatened Plaintiff for voicing complaints that Supervisor GONZALEZ had subjected Plaintiff to egregious sexual harassment.

h.   On or about April 11, 2018, Director Farrell ignored Plaintiff's complaints related to being subjected to harassment and retaliation by Supervisor Gonzalez and MIDO management, but accepted false allegations that Plaintiff was stealing time.

i.   On or about April 11, 2018, during a meeting in front of Plaintiff's coworker Michael Bethea, Director Farrell accused Plaintiff of attempting to "set up" Supervisor Gonzalez. Additionally, Director Farrell threatened to terminate Plaintiff's employment on the basis that Plaintiff was lying.

j.   On or about August 1, 2018, Plaintiff Nieves was formally denied a transfer

to Memphis office.

k. On or about September 5, 2018, Plaintiff Nieves was denied a step increase and performance evaluation.

l. MIDO management failed/refused assign Plaintiff to a supervisor from September 5, 2018, through March 19, 2019.

m. On or about March 14, 2018, Plaintiff NIEVES's work schedule was changed in retaliation for his repeated complaints about and objections to Supervisor GONZALEZ's sexual harassment. Specifically, Plaintiff was asked to start coming in at 6am, instead of 9am. When Plaintiff requested accommodations because his PTSD/anxiety medications made it very difficult for him to begin work at 6 am, such accommodations were denied without any explanation.

n. On or about, March 14, 2018Plaintiff NIEVES was assigned more than 20 old cases from a different unit-T-5, Supervisor Fernella Peters

o. On or about March 23, 2019, Director Farrell denied Plaintiff's an opportunity for overtime work, despite the fact that Plaintiff was a top performer at the time.

p. On or about June 15, 2018, Plaintiff requested a lateral transfer to either the Tampa or Memphis office. Director Farrell communicated to Plaintiff that a transfer to the Memphis was not going to happen, that Plaintiff could apply for a transfer to the Tampa office where Plaintiff would be demoted to GS-7 investigator and be placed on a one (1) year probation.

q. On or about July 12, 2018, Director Farrell denied Plaintiff NIEVES's

transfer request to the Tampa office without being provided a reason for the denial. Specifically, Director Farrell said to Plaintiff, "I won't let you go."

r.   On or about July 9, 2018, Nitza Wright denied Plaintiff's promotion to a GS-11.

s.   On or about July 17, 2018, Plaintiff NIEVES's transfer request to the Memphis office was denied, without any reason for the denial.

t.   On or about July 3, 2019, Mercedes Riccardo threatened to use a firearm on Plaintiff Nieves.

u.   On or about July 16, 2019, Yolanda Owens, Enforcement Manager at OCHCO, prohibited Plaintiff rom voicing complaints related Supervisor Riccardo's threats to use a firearm on Plaintiff.

v.   On or about August 21, 2019, Director Farrell baselessly accused Plaintiff of committing fraud against the United States government.

w.   On or about July 24, 2019, Plaintiff was denied Plaintiff's a promotion to a GS-11.

56.   Since 2016, despite being aware of Plaintiff NIEVES's resistance to his supervisor's sexual advances and unwarranted conduct, MIDO management, failed and/or refused to take immediate and reasonable actions to protect him from Supervisor GONZALEZ's constant and multiple attempts to rebuff her offensive conduct.

57.   MIDO management hindered Plaintiff NIEVES's ability to advance his career within and outside the EEOC. Specifically, Plaintiff was denied performance appraisals, when he began working under Ms. Riccardo. Additionally, Plaintiff was denied a promotion in July of 2018 and July of 2019.

58.      As a result of the retaliation, Plaintiff NIEVES's demeanor changed as became more withdrawn, less energetic, experienced difficulty concentrating. In addition, Plaintiff NIEVES suffered from loss of credibility and a damaged professional reputation. Plaintiff NIEVES's work was overly scrutinized to the point that he second guessed his every move.

59.      Prior engaging in EEO protected activity on or about October 17, 2017, and November 3, 2017, Plaintiff NIEVES was a good investigator with no documented record evidence that his performance was poor.

60.      Plaintiff NIEVES earned less money as he was denied cash awards and promotions in July of 2018 and July of 2019.

61.      Between 2017 and 2020, MIDO management attempted to constructively terminate Plaintiff by by continuously retaliating against Plaintiff Nieves, as set forth in paragraphs 55 (a) – (w),for his repeated complaints and opposition to the sexual harassment to which he was subjected and his intention to take legal action for Defendant's failure to redress his complaints.

62.      On or about March 19, 2020, Plaintiff NIEVES was forced to medically retire as his health continued to deteriorate as result of the harassment and retaliation that he was subjected to by Supervisor Gonzalez and MIDO management.

63.      The retaliation affected the terms and conditions of Plaintiff NIEVES's employment as outlined above in specific detail.

64.      Any remedial action taken by Defendants related to Plaintiff NIEVES's, as well as other similar situated male employees, claims was never prompt or reasonably calculated to end the harassment.

65.      Given the duration and nature of the conduct, it is apparent that Plaintiff NIEVES's work environment was objectively hostile and that Plaintiff NIEVES subjectively believed the

environment was hostile and abusive.

66.       Defendants' actions from 2016 to March of 2020, would clearly deter a reasonable person from opposing discriminatory harassment.

67.       As of the filing of this pleading, Supervisor GONZALEZ remains employed by Defendants.

68.       As a result of the foregoing, Plaintiff NIEVES suffered damages.

**CLAIMS FOR RELIEF**

**COUNT I**
**(Harassment based on Sex)**
**(Title VII of the Civil Rights Act of**
**1964, U.S.C. §§ 2000(e), et. Seq.)**

69.       Plaintiff NIEVES incorporates by reference the allegations paragraphs 1-33.

70.       Plaintiff NIEVES, a member of a protected class (male), brings this claim on his own behalf and on behalf of all similar situated male employees of MIDO.

71.       On a continuing basis since at least 2016, Defendants were aware that Supervisor GONZALEZ, his direct supervisor, subjected Plaintiff NIEVES to unwelcome conduct related to his sex, male, including sexual advances, requests for favors, or other verbal or physical conduct of a sexual nature location in violation of 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3(a). Specifically, Defendants were aware that Supervisor GONZALEZ subjected Plaintiff NIEVES to unwelcome conduct related to his sex as outlined in paragraphs 19 to 33, above.

72.       The harassment and unlawful employment practices suffered by Plaintiff NIEVES, as set forth  in paragraphs 19 through 33  were based on his sex, male.

73.       The effect of the harassment and unlawful employment practices complained of in paragraphs 19 through 33 above was sufficiently severe and pervasive and had the purpose and effect of unreasonably interfering with the work environment and/or creating an intimidating,

hostile or offensive work environment.

74.    The effect of the harassment and unlawful employment practices complained of in paragraphs 19 through 33 above has been to deprive Plaintiff since at least 2016 of equal employment opportunities and otherwise adversely impact their status as employees because of their sex, male.

75.    The unlawful employment practices complained of in 19 through 33 above were intentional and caused Plaintiff NIEVES to suffer emotional distress, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation and/or personal stress and mental and physical pain and suffering

76.    The unlawful employment practices complained of in 19 through 33 above were intentional and caused Plaintiff NIEVES to lose earnings, compensation and income including, but not limited to, back-pay.

77.    The unlawful employment practices complained of in 19 through 33 above were engaged in with malice or with reckless indifference to the federally protected rights of Plaintiff NIEVES.

78.    The unlawful employment practices complained of in 19 through 33 above form the basis for imputing liability on Defendants as Defendants were aware of the harassment and unlawful employment practices since 2016 and failed to take any prompt and/or reasonable action to end the harassment.

## CLAIMS FOR RELIEF

### COUNT II
### (Retaliation/Retaliatory Harassment) (Title VII of the Civil Rights Act of 1964, U.S.C. §§ 2000(e), et. Seq.)

79.     Plaintiff NIEVES incorporates by reference the allegations in paragraphs 1 through 18 and paragraphs 34 through 68.

80.     Plaintiff NIEVES, at all times material hereto, undertook protected conduct when he complained to Supervisor GONZALEZ and Defendants about the unwanted conduct as outlined in paragraphs 34 through 68.

81.     As a result, thereof, Defendants took a material adverse action against Plaintiff NIEVES. Specifically, Defendants retaliated against Plaintiff NIEVES as outlined in 34 through 68, above.

82.     A causal nexus exists between Plaintiff NIEVES's undertaking of the protected acvity and the material adverse action taken by Defendants against Plaintiff set forth in paragraphs 34 through 68.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff JUAN NIEVES respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendants, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from subjecting male employees to unwelcome, sexually graphic and vulgar sexual harassment and retaliation for opposing such harassment.

B.     Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for male, and which eradicate the effects of its past and

present unlawful employment practices.

       C.      Order Defendants to make whole Plaintiff NIEVES by providing restitution and compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 19 through 68 above, in amounts to be determined at trial;

       D.      Order Defendants to make whole Plaintiff NIEVES by providing full restitution and compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraphs 19 through 68 above, in amounts to be determined at trial;

       E.      Order Defendant full restitution or compensation for loss of personal and sick leave, and for all retirement benefits

       F.      Order Defendants to pay Plaintiff NIEVES punitive damages for its malicious and reckless conduct described in 19 through 68 above, in amounts to be determined at trial;

       G.      Order Defendants to pay Plaintiff for any benefits including, but not limited to, sick leave, annual leave, or leave without pay taken as a result of the alleged discriminatory or retaliatory harassment.

       H.      Order Defendants to remove any documentation concerning the leave restriction from Plaintiff's personnel records.

       I.      Order Defendants to remove any documentation concerning Plaintiff NIEVES's current PIP or references thereto from Plaintiff's personnel file.

       J.      Order Defendants to consider taking disciplinary action against Supervisor GONZALEZ. In determining the appropriate disciplinary action, the Agency must consider Supervisor GONZALEZ egregious misconduct and 29 CFR 1604 (EEOC's Zero Tolerance Policy).

       K.      Award Plaintiff his costs of bringing this action, including reasonable attorneys'

fees under 42 U.S.C.A. § 2000e-5; Fla. Stat. § 760.11 (2004); and 42 U.S.C.A. §§ 12203 and 12205; and pre- judgment interest.

L.     Order Defendant to pay interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest.

M.     Grant such further relief as the Court deems necessary and proper in the public's interest.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule 38(b), trial by jury on all issues presented herein is respectfully demanded.

Dated: July 15, 2022

<div style="margin-left:40%">

_/s/ *David M Fraguio*_

**JOSÉ A. SOCORRO, ESQ.**
Florida Bar No.: 011675
**DAVID M. FRAGUIO, ESQ.**
Florida Bar No.: 1016475
AZOY SOCORRO, LLP
*Attorneys for Plaintiff*
2020 Ponce de Leon Blvd.,
Suite 1008 Coral Gables,
Florida 33134
Tel: (305) 340-7542
Fax: (305) 418-7438
Email:jose@azoysocorro.com;;
david@azoysocorro.com

</div>

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically filed using the online CM/ECF Filing on this 15th day of July 2022 Defendants' counsel Karin D. Wherry, ASSISTANT U.S. ATTORNEY, 99 N.E. 4th Street, 3rd Floor Miami, Florida 33132, Karin.Wherry@usdoj.gov..

/s/ *David M Fraguio*_____
**JOSÉ A. SOCORRO, ESQ.**
Florida Bar No.: 011675
**DAVID M. FRAGUIO, ESQ.**
Florida Bar No.: 1016475
AZOY SOCORRO, LLP
*Attorneys for Plaintiff*
2020 Ponce de Leon Blvd.,
Suite 1008
Coral Gables, Florida 33134
Tel: (305) 340-7542
Fax: (305) 418-7438
Email: jose@azoysocorro.com;
david@azoysocorro.com